UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LIONEL GIBSON, | ) |
| Petitioner, | ) |
| v. | ) No. 1:20-cv-00928-JMS-MPB |
| MARK SEVIER, | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Lionel Gibson's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case MCF 19-05-0493. Mr. Gibson's petition is **denied**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

Mr. Gibson was charged with and convicted of violating the Disciplinary Code by possessing a cell phone. Officer Coffin stated in a conduct report that he and Caseworker B. Rogers entered Mr. Gibson's cell after smelling smoke. Dkt. 18-1. After cell the door opened:

> Offender Gibson, Lionel G 304 jumped out of bed and started unplugging items and shoving them in his right pocket of his sweat pants. I told him to turn around so I could search his person. Offender Gibson turned around and started to shove an item down the toilet and attempted to flush it. I told him to turn around and cuff up. Offender Gibson pinned me against the wall using his back side. Offender Gibson used force against my person in attempt to get rid of his items. Offender Gibson pushed Officer Coffin against the wall using his back side. Then Offender Gibson ran along the 300 range in a panic and stopped at cell 343/344 opened the cuff port and dropped something inside. Cell 343/344 was opened and a cell phone was located on the floor next to the door. A cell phone charger was retrieved from cell 303/304's toilet.

*Id.* Caseworker Rogers' written statement echoes Officer Coffin's report. Dkt. 18-11.

The record includes a picture of a cell phone, a pair of headphones, a USB cord that could connect the phone to a charger or another device, and evidence records documenting the confiscation of those three items. Dkts. 18-2, 18-3, 18-4. In response to a request from Mr. Gibson, Officer Coffin provided a written statement clarifying that he found the USB cord in the toilet bowl in Mr. Gibson's cell. Dkts. 18-5, 18-8, 18-10. The cell phone was found in another cell. Dkts. 18-1, 18-10.

Officer A. Goodridge provided a written summary of the security video, stating, in relevant part:

> I was able to see that Offender L. Gibson moving around a lot in the cell. When he steps to the door way I can see him bending over and it appears that he places his butt against the officer and rotates away from him. Once he clear of the officer he takes off running under the stairs and down to cell 343-344. He appears to do something but I am unable to see fully due to the angle of the offender and the angle of the camera.

Dkt. 18-9 (errors in original). The Court finds no discrepancy between this summary and the video presented for *in camera* review. *See* dkt. 23.

The prison staff charged Mr. Gibson with possessing a cellular device in violation of Code 121. Dkt. 18-8. Code 121 punishes "[u]nauthorized use or possession of any cellular telephone or other wireless or cellular communications device." Dkt. 18-15 at 3. The Disciplinary Code defines "possession" as "[o]n one's person, in one's quarters, in one's locker or under one's physical control." Dkt. 18-16 at 5.

At his disciplinary hearing, Mr. Gibson argued that no evidence supported the charge. Dkt. 18-8. Specifically, he noted that Officer Coffin's conduct report did not even state that he possessed a cell phone; rather, it stated Officer Coffin saw him with *something* and found a cell phone after the fact. *Id.*

Nevertheless, the hearing officer found Mr. Gibson guilty of possessing a cellular device and assessed sanctions, including a loss of earned credit time and a credit-class demotion. Dkt. 18-8. The hearing officer determined that the conduct report, Caseworker Rogers' statement, and the pictures of the confiscated evidence supported a finding of guilt. *Id.*

Mr. Gibson appealed his disciplinary conviction, raising the following issues:

- He was wrongly charged with multiple disciplinary violations based on the same incident.

- The evidence did not support the hearing officer's decision.

- The conduct report and Casework Rogers' statement were not reliable evidence against him.

- The hearing officer was "directed or intimidated into" finding him guilty and therefore was not impartial.

Dkt. 18-13. Both the Warden and the Appeal Review Officer denied Mr. Gibson's administrative appeals. Dkts. 18-13, 18-14.

## III. Analysis

Mr. Gibson argues that he is entitled to habeas relief because the evidence did not support the hearing officer's decision and because his hearing officer was not impartial. Both arguments fail.

**A.      Sufficiency of the Evidence**

Mr. Gibson identifies several flaws in the evidence the hearing officer cited as demonstrating his guilt:

- Neither Officer Coffin nor Caseworker Rogers stated that they saw Mr. Gibson with a cell phone; rather, they saw him unplugging "items" and then found a cell phone in a different inmate's cell.

- The item removed from his toilet was not a cell phone charger (as Officer Coffin documented) but "a [cord] that attaches to a USB."

- Caseworker Rogers' statement falsely states that he resisted officers after being sprayed with a chemical agent, is contradicted by the security video, and therefore should not be trusted at all.

- The video does not show Mr. Gibson with a cell phone.

- Another inmate was present in the cell where the phone was found, and the prison staff should have deemed that inmate in possession of the phone.

*See* dkt. 26 at 27–32.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The

some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Officer Coffin's conduct report, Caseworker Rogers' statement, and the physical evidence in the record clear the meager evidentiary threshold applicable to the disciplinary proceeding. Together, they establish the following facts:

- When Mr. Gibson's cell door opened, he unplugged something and tried to flush it down the toilet.
- That item turned out to be a USB cord.
- Mr. Gibson ran from the cell and dropped something in another inmate's cell.
- A cell phone was found in that cell.

These facts support the hearing officer's conclusion that Mr. Gibson possessed a cell phone. Taken together, they would have allowed the hearing officer to reason that the cell phone originated in Mr. Gibson's cell and that he carried it down the range before dropping it in another inmate's cell. Mr. Gibson's observations about inconsistencies and imprecisions in the evidentiary record ask the Court to consider the same evidence placed before the hearing officer and reach a different conclusion. Because some evidence supports the hearing officer's decision, though, the Court cannot accept Mr. Gibson's invitation to reweigh the evidence. Due process required only that the hearing officer tie her decision to *some* evidence, and she did so. That ends the inquiry.

### B. Impartiality of Decision-Maker

Mr. Gibson also argues that he was denied his due-process right to a hearing before an impartial decision-maker. Specifically, he asserts that the hearing officer had a personal bias against him based on "an adverse history." Dkt. 17 at 4. More broadly, Mr. Gibson asserts that the disciplinary hearing process is "corrupt." *Id.* These arguments fail for distinct reasons.

#### 1. Adverse History

The respondent contends that Mr. Gibson's "adverse history" argument is procedurally defaulted. A court may not grant a habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019). Because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner exhaust her claims through the Indiana Department of Correction's (IDOC) administrative appeals process. *Moffat*, 288 F.3d at 981–82.

The IDOC maintains a two-step administrative appeal process. Dkt. 18-16 at 52–55. The prisoner must first complete an appeal form and submit it to the superintendent or his designee—the "facility head." *Id.* at 53. If the prisoner is dissatisfied with the facility head's ruling, he may forward the original appeal and the facility head's decision to the Appeal Review Officer. *Id.*

Mr. Gibson did not raise his "adverse history" argument to either the facility head or the Appeal Review Officer. *See* dkt. 18-13. Mr. Gibson states in his reply that he raised this argument generally by asserting in his first-level appeal that the hearing officer "was not impartial because she was forced to find him guilty," then "raised the same claim and went into much more detail"

6

in his second-level appeal. As an initial matter, these are not the same arguments. Accusing a hearing officer of taking orders from a superior is fundamentally different from accusing her of finding an inmate guilty because of personal animosity. Regardless, nothing in the record indicates that Mr. Gibson presented different materials to the Appeal Review Officer than he presented to the facility head.

"A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citation omitted). Mr. Gibson has not demonstrated any cause for failing to raise the hearing officer's personal animosity toward him in his administrative appeals. If their adverse history predated his disciplinary hearing, he knew of it and should have been able to raise it in his appeals. He also does not provide any reason why treating his adverse-history argument as procedurally defaulted would work a miscarriage of justice.

Mr. Gibson offers nothing more than "perfunctory and undeveloped arguments" why his adverse-history argument is not procedurally defaulted, and such arguments "are waived . . . ." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (internal quotations omitted). The Court cannot entertain this issue and therefore moves on to his broader corruption argument.

**2. General Corruption**

Mr. Gibson asserts that multiple staff members involved in the disciplinary process, including the officer who screened the conduct report and notified him of his disciplinary charge, "have been fired for [improprieties] involving conduct report hearings." Dkt. 17 at 5. These

improprieties include "accepting payoffs [and] tampering with evidence." *Id.* This argument meets a more straightforward analysis.[1]

A prisoner in a disciplinary action has the right to be heard by an impartial decision-maker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). "[T]he constitutional standard for impermissible bias is high." *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Asserting that some staff members have behaved corruptly is not the same as asserting that the Mr. Gibson's disciplinary hearing was tainted by corruption. More to the point, the allegation that Mr. Gibson's *screening officer* was fired for corruption does not support an inference that his *hearing officer* was biased against him.

Due process entitled Mr. Gibson to a hearing before an impartial officer. Mr. Gibson has not provided any evidence to overcome the law's presumption that he received just such a hearing.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Gibson's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the

---

[1] Mr. Gibson does not appear to have raised general corruption in his disciplinary appeals. Nevertheless, the respondent does not ask the Court to find this argument procedurally defaulted, so the Court addresses it on the merits.

8

relief he seeks. Accordingly, Mr. Gibson's petition for a writ of habeas corpus is **denied**, and the action is **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

  **IT IS SO ORDERED.**

Date: 7/7/2021

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

LIONEL GIBSON
104608
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov